IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK W. LEUTHNER, ET AL., | : | |
| | : | No.  4:CV-02-1709 |
| Plaintiffs, | : | |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| BLUE CROSS OF NORTHEASTERN | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**September 8, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion for Summary Judgment ("the Motion") (doc. 220) filed by Defendant Blue Cross of Northeastern Pennsylvania ("Defendant" or "Blue Cross") on May 4, 2005.  For the reasons that follow, the Motion shall be denied in all respects.

**FACTUAL BACKGROUND/PROCEDURAL HISTORY:**

The factual background and procedural history of this case has been thoroughly set forth in prior orders and is well known to the parties.  The following brief recitation of that history is sufficient for the purpose of reviewing the pending

1

Motion.

The plaintiffs Frank W. Leuthner ("Leuthner") and William Reasner ("Reasner") (collectively "Plaintiffs") initiated this action on September 26, 2002, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* and Pennsylvania state law.  This suit was brought by Plaintiffs in their capacity as retired salaried employees of Blue Cross and as participants in the Blue Cross of Northeastern Pennsylvania Retiree Health Insurance Plan ("the Plan"), an employee welfare plan sponsored and administered by Blue Cross which is subject to ERISA.

On May 4, 2005 Defendant filed the instant Motion, which has been briefed by the parties.  The Motion is therefore ripe for disposition.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed .R. Civ. P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could

draw from them.  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).  Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."

3

Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.

1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to

materiality, the substantive law will identify which facts are material." Id. at 248. A

dispute is considered to be genuine only if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Id.

**DISCUSSION:**

Blue Cross contends that Plaintiff's Second Amended Complaint (doc. 81)

should be dismissed because Plaintiffs have failed to establish reasonable

detrimental reliance on Blue Cross's alleged promises of lifetime retirement funding,

and because Plaintiffs have not stated a claim for relief permissible under ERISA.

(See Rec. Doc. 222 at 7-36).  Defendants further argue that Plaintiffs' claims are

barred by the statute of limitations and that Plaintiff Reasner's claims are barred by

the release from liability that he signed on May 24, 1999. (See Rec. Doc. 222 at 37-

48).  We will consider these arguments in turn.

**A.**    **Detrimental Reliance Element of Breach of Fiduciary Duty**

**Claim**

Defendant presents a number of arguments to demonstrate that Plaintiffs'

alleged reliance on the expectation of fully-funded lifetime benefits was

unreasonable.  Specifically, Defendant references a number of documents

distributed by the company that reveal the "truth" behind Plaintiffs' benefits, which

is in its view that Blue Cross retained the right to alter the employees' benefits at any

time.  (See Rec. Doc. 222 at 7-13).  Defendant argues that reliance on any alleged

misrepresentations or expectancies by an employer is always unreasonable when

employees have in their possession information explaining their benefits. See In re

Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 58 F.3d 896, 908 (3d Cir.

1995) [hereinafter "Unisys I"]. Defendant further notes that prior changes to

employees' plans should have alerted Plaintiffs that their benefit structure was

subject to change.  Unisys I mandates that Plaintiffs' possession of such

information would indeed preclude recovery for an equitable estoppel claim.

However, such evidence is not sufficient to defeat a claim for breach of fiduciary

duty for the reasons discussed below.

A fiduciary's obligations with respect to its beneficiaries include not only the

duty not to mislead, but "also an affirmative duty to inform when the trustee knows

5

that silence might be harmful." <u>Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund</u>, 12 F.3d 1292, 1300 (3d Cir. 1993).  The Third Circuit Court of Appeal's decision in <u>Bixler</u> led to the district court's reconsideration and ultimate reinstatement of the <u>Unisys</u> plaintiffs' claims for breach of fiduciary duty, which the Third Circuit subsequently affirmed.  <u>See</u> <u>In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation</u>, 242 F.3d 497, 500-02 (3d Cir. 2001) (explaining the intervening decision of <u>Bixler</u>'s effect on the <u>Unisys</u> procedural history) [hereinafter "<u>Unisys III</u>"].  The <u>Unisys III</u> court established that providing plaintiffs with a summary of their benefits did not, "as a matter of law satisfy Unisys's fiduciary responsibility." <u>Unisys III</u>, 242 F.3d at 508.  Rather, plaintiffs' possession of a plan summary is a factor to be considered along with the other information plaintiffs' received and "the context in which [it] was conveyed." <u>Id.</u>  In some circumstances, a fiduciary's failure to correct beneficiaries' mistaken reliance on benefits can constitute a breach of fiduciary duty, even if the beneficiaries' reliance is unreasonable.  <u>Id.</u>  The <u>Bixler</u> and <u>Unisys</u> decisions focus on "'a fiduciary's duty to deal fairly with its beneficiary and, more specifically, to communicate . . . material facts affecting the interest of the beneficiary which [the fiduciary] knows the beneficiary does not know and which the beneficiary needs to know for his protection.'" <u>Id.</u> (<u>quoting</u> Restatement (Second) of Trusts § 173 cmt. d

(1959)(internal citations omitted)).

Accordingly, Plaintiffs' failure to take note of the various changes and documents that Defendant alleges should have apprised them of "the truth" behind their plan will not, as a matter of law, preclude their claims for breach of fiduciary duty.  Rather, if the fiduciary should have foreseen that the messages conveyed could have caused employees to rely to their detriment, and failed to correct such confusion, a trier of fact could find that a fiduciary had breached its duty to adequately inform its beneficiaries.  The quality and context of the various messages and representations that Plaintiffs received, and the foreseeability of their misunderstanding, are matters most appropriately decided by the trier of fact. Accordingly, summary judgment is not appropriate on these grounds.[1]

Defendant next argues that Plaintiffs' claims are invalid because they have failed to show that their alleged acts of detrimental reliance bear a causal connection to Blue Cross's alleged misrepresentations at the time of reliance.  It appears from this argument that Defendant, for example, would require Plaintiffs to establish that each of their investment decisions involved a consideration of their post-retirement

------

[1] Based upon our determination that Plaintiffs have stated a cognizable claim for breach of fiduciary duty, we will accordingly leave for trial issues including the extent and type of Defendant's misrepresentations, Plaintiffs' understanding of the plan, whether Blue Cross had met its duty of informing Plaintiffs of the details of the Plan, the foreseeability of Plaintiffs' detrimental reliance, and the extent of the injury sustained.

benefits, based on Blue Cross's misrepresentations that benefits were permanent.

Defendant does not provide precedent to support the imposition of such impossible

specificity, and we do not believe that the law requires it.  Rather, Plaintiffs must

allege and subsequently prove that the Defendant's misrepresentations induced

action or forbearance that caused Plaintiffs' alleged harm.  In our Order of February

25, 2004, we found that Plaintiffs had adequately pled these elements.  (See Rec.

Doc. 117).  Therefore, we will not grant summary judgment on this basis.

Defendant asserts that Plaintiffs have not adequately alleged detrimental reliance

because they have not shown (1) that they would have changed their investments had

they known that their benefits were not permanent, or (2) that any of their followed

investments actually left them in a worse position.  (See Rec. Doc. 222 at 15-28).

Defendant has not convinced this Court that our previous ruling on the issue of

detrimental reliance requires such a showing at this juncture.  As noted in our Order

of February 25 (doc. 117), Plaintiffs' allegations should be considered "intermingled

and to some extent dependent upon one another."  (See Rec. Doc. 117 at 16).  We

find that Plaintiffs have sufficiently alleged the detrimental reliance element by

showing that their denial of expected health benefits has caused them to make

unplanned expenditures to finance their retirement costs.  In addition, Plaintiffs'

allegations support the inference that had Blue Cross adequately informed them of

the true state of their benefits, Plaintiffs would have accounted for the extra expense and presumably would have arrived at this juncture in a better financial position than they currently find themselves.  Id. at 16-17. With regard to Defendant's arguments that Plaintiffs' deposition testimony defeats their claims, we find that genuine issues of material fact exist that will preclude us from determining to what extent Plaintiffs' alleged acts of reliance have resulted in financial detriment.

Defendant has not convinced this Court that Blue Cross is entitled to judgment based upon the pleadings set forth.  We have found that Plaintiffs have stated a cognizable claim, on which a trier of fact may find that relief is appropriate. To be sure, genuine issues of material fact remain which could certainly resolve in favor of Defendant, thereby releasing Blue Cross from any liability on these and other issues set forth in the pleadings.  However we will not conjecture about the ultimate veracity of Plaintiffs' claims, but will leave the resolution of Plaintiffs' detrimental reliance claim and any resultant injury to the trier of fact.  Summary judgment on the detrimental reliance issue is therefore denied as genuine issues of material fact remain.

**B.**     **Appropriate Relief  under ERISA**

**1.**     **Causal Connection Required for Fiduciary Breach**

Defendant next argues that the relief sought by Plaintiffs is not appropriate under applicable provisions of ERISA.  Defendant maintains that Plaintiffs' claims

are invalid because they have failed to establish a nexus between the alleged fiduciary breach and the money that Blue Cross saved.  (See Rec. Doc. 222 at 29; Rec. Doc. 249 at 18).  Defendant accurately submits that a claim for breach of fiduciary duty requires an element of causality, but misconstrues this nexus requirement as mandating that a connection between the fiduciary breach and the **funds** that Plaintiffs seek be established.  Third Circuit precedent does not draw such a connection, but instead requires a causal nexus to exist between the breach of fiduciary duty and the **injury** claimed by Plaintiffs.

Defendant presents a quotation from Unisys III that states:

> [T]he alleged breach of fiduciary duty here concerned the counsel allegedly given or not given, and there is no causal nexus between that counsel and the denial of free health care coverage. If Unisys had provided clear and accurate counsel, some [alleged acts of detrimental reliance] may not have occurred when they did, but there is no reason to believe retirees would now have free coverage. As the District Court held, Unisys had a right to terminate free health care coverage and it exercised that right in a non-fiduciary capacity.

Rec. Doc. 222 at 31 (quoting Unisys III, 242 F.3d at 506).  The distinction noted by the Unisys III court, however, refers to the formation of the "resulting harm" element to establish the last action constituting defendant's breach for the purposes of the statute of limitations.  See Unisys III, 242 F.3d at 506 (citing In re Unisys Corp., 957 F. Supp. 628, 639 (E.D. Pa. 1997)).  After finding that the denial of free health care

was not an element of plaintiff's claim, thereby resolving the statute of limitations

issue, the court then found that plaintiffs had established the requisite causal

connection to support a claim for breach of fiduciary duty based on defendant's

misrepresentations.  <u>Unisys III</u>, 242 F.3d at 506.  The <u>Unisys III</u> opinion, therefore, in

no way stands for the proposition that Plaintiffs cannot recover funds unless they

demonstrate that the act constituting the breach caused the funds in question to be

withheld.

Defendant additionally cites a number of cases from the Third Circuit and

other jurisdictions to support this causal-connection argument. We find that the

citations provided, as well as Defendant's parenthetical explanations of each case,

fully support our conclusion that the nexus requirement should exist between the

fiduciary breach and resulting harm, and not between the breach and the

remuneration sought.  (<u>See</u> Rec. Doc. 222 at 31).  In sum,  Defendant's

assertions present an untenable jump from both logic and precedent that we are

not prepared to make in the case <u>sub judice</u>.  Regardless of whether the money

that Blue Cross saved was improperly obtained, Blue Cross's misrepresentations

(according to Plaintiffs' allegations) caused Plaintiffs to make financial,

employment, and retirement decisions that resulted in financial injury. Plaintiffs

have therefore met their burden of alleging that the fiduciary breach caused the

injury sustained.[2]

### 2.     <u>Great West's Specificity Requirement</u>

Next, Defendant asserts that Plaintiff's claim for funds in Blue Cross's

possession does not meet the specificity requirements instituted in <u>Great-West Life

and Annuity Insurance Company</u>, 534 U.S. 204, 213 (2002).  Pursuant to <u>Great

West</u>, Plaintiffs can state a claim for equitable relief if they allege that "money or

property identified as belonging in good conscience to [them] could clearly be

traced to particular funds or property in [D]efendant's possession."  <u>Id.</u> Defendant

argues that because the funds in question are not held separately from Blue

Cross's general assets, these funds cannot be identified as belonging to Plaintiffs.

In our February 25 Order, which it appears that Defendant seeks to have us revisit,

this Court addressed the specificity requirements set by <u>Great-West</u> in detail.  (<u>See</u>

---

[2] <u>Daniels v. Thomas & Betts Corp</u>, 263 F.3d 66 (3d Cir. 2001), elucidates the application of these principles to a factually similar case.  In <u>Daniels</u>, the plaintiff filed suit to collect her husband's life insurance benefits, alleging that misinformation given by his employer constituted a breach of fiduciary duty.  Because Mrs. Daniels was not a beneficiary of the Plan, and therefore was not entitled to the benefits in question, the court found that:

> "any recovery Mrs. Daniels would receive as a consequence of the present cause of action for fiduciary breach would come out of [Thomas and Betts's] pocket (<i>i.e.</i>, on the theory that [Thomas and Betts] made materially misleading statements about the plan), and not out of [the insurance carrier's] (<i>i.e.</i>, on the theory that the plan's provisions entitle Mrs. Daniels to payment pursuant to its terms)."

<u>Id.</u> at 78.

Rec. Doc. 117).  To reiterate, we concluded that Plaintiffs had appropriately

instituted an action to "recover funds in Defendant's possession that Plaintiffs

contend belong 'in good conscience' to them."  (Rec. Doc. 117 at 25).[3]  Great-

West  does not require funds to be individually marked as the ill-gotten gains of

fiduciaries in order for Plaintiffs to collect monies that belong to them. Plaintiffs

have met the standard set by Great-West by alleging that quantifiable and

obtainable funds exist in Blue Cross's possession that belong "in good

conscience" to Plaintiffs.[4]

### 3.      Nature of the Remedy Plaintiffs Seek

Defendant next argues that the relief Plaintiffs seek is not "equitable" in

nature, finding that Plaintiffs' attempt to procure future benefits or monetary relief

that exceeds the funds that they lost to be at odds with general principles of

equitable relief.  Though Great-West provides the starting point for an analysis of

---

[3] In Great West, the Supreme Court found that Plaintiffs had not claimed specific or identifiable funds because the funds in question were dissipated and therefore unobtainable. See Great-West, 534 U.S. at 214.  In our Order of February 25, we found no indication that the funds Plaintiffs seek were similarly unobtainable.  We therefore found it appropriate to uphold Plaintiffs' claims.

[4] As we noted previously, Plaintiffs should not consider these findings to be an indication of the ultimate viability of their claims.  The parties' briefs have demonstrated that genuine issues of material fact exist with regard to the amount and type of injury allegedly suffered by Plaintiffs.  It is therefore inappropriate for us to address the extent of the injury or attempt to quantify the relief to be awarded.  We conclude only that Plaintiffs have stated a colorable claim for breach of fiduciary duty and have alleged an appropriate remedy.

equitable benefits in ERISA cases, the Third Circuit is, to a certain extent, split

regarding Great West's application to the case at hand.  Compare Tannenbaum v.

UNUM Life Ins. Co., 2004 U.S. Dist. LEXIS 5664 at 18-19 (E.D.Pa. 2004)

(finding restitution of benefits for defendant's breach of fiduciary duty to be a

legal remedy), with Godshall v. Franklin Mint Co., 285 F.Supp.2d 628, 634 (E.D.

Pa. 2003) (finding equitable remedies such as restitution, disgorgement, and an

other injunctive relief to be  appropriate equitable relief for ERISA violations under

Great-West).  This Court has disposed of this issue in past proceedings, finding

Plaintiffs' claims to be equitable in nature.  (See Rec. Doc. 117 at 25).[5]  However,

we will take this opportunity to speak to this issue in more detail so as to provide a

framework for proceedings following this Order.

       Generally, equitable relief exists to redress an injury when legal remedies

cannot adequately compensate the injured.  See Black's Law Dictionary 1320 (8th

ed. 1999).  In Great-West, the Supreme Court limited the type of equitable relief

available to plaintiffs asserting ERISA violations.  See Great-West, 534 U.S. at

213.  However, Great-West does not altogether foreclose the possibility of

---

       [5] In our Order of February 25, 2004, we found that Plaintiffs do not simply request
compensation for losses sustained due to Defendant's breach. Rather, Plaintiffs claim funds that
rightfully belong to them, but that Blue Cross wrongfully retained the funds by misrepresenting, then
withdrawing, the benefits.

payment of funds when plaintiffs claim "equitable restitution," proving that

property exists in a defendant's possession that belongs "in good conscience" to

a plaintiff.  See id.  This form of monetary restitution often takes shape as a

constructive trust imposed over the defendant's funds.  Id.   As the Restatement

of Restitution reveals, a constructive trust serves to "restore to the plaintiff

property of which he has been unjustly deprived and to take from the defendant

property the retention of which by him would result in a corresponding unjust

enrichment of the defendant . . . ."  Restatement of Restitution § 160, cmt. d, at

643.

     The Third Circuit Court of Appeals in, Skretvedt v. E.I. Dupont De

Nemours, 372 F.3d 193 (3d Cir. 2004), applied this analysis to determine that

plaintiff was entitled to both the money wrongfully retained by the beneficiary, and

any interest collected, to cure the plaintiff's delay of benefits.  Id. at 214.  In

Skretvedt, the Third Circuit found that "if the defendant has made a profit through

the violation of a duty to the plaintiff to whom he is in a fiduciary relation, he can

be compelled to surrender the profit to the plaintiff, although the profit was not

made at the expense of the plaintiff[.]"  Id. at 213-14.  Accordingly, we find that

Plaintiffs' possible remedy should not be quantified as the funds lost from failing

to save appropriately, which would be legal in nature.[6]  Rather, if Plaintiffs prevail

on their claims, they will collect the funds that would have been earmarked to pay

for the lost benefits that they would have received but for the plan amendment.

A recent case decided in the U.S. District Court for the Eastern District of

Pennsylvania provides compelling logic on this issue.  In Schaeffer v. Albert

Einstein Health Care Network, 2004 WL 1012574 (E.D. Pa. 2004), the court found

that appropriate redress of a fiduciary breach would enable plaintiff to obtain an

equivalent benefit that he would have received but for the alleged breach of

fiduciary duty.  Id. at *5 (holding that appropriate relief for breach of fiduciary

duty to be the funds that the fiduciary would have continued to pay had they

provided accurate information to plaintiff).  Our formulation of this equitable

remedy focuses on the principles of equitable relief as noted above, as well as on

the underlying purpose of ERISA, which is to "promote the interests of employees

and their beneficiaries in employee benefit plans."  Id. (quoting Shaw v. Delta

Airlines, Inc., 463 U.S. 85, 90 (1983)).

**C.** **Accrual of Plaintiffs' claims**

---

[6] If Plaintiffs could seek compensatory relief or other legal remedies pursuant to ERISA, then
Defendant's arguments regarding the inequity of future payments and windfalls to the Plaintiff would
mitigate Plaintiffs' claims for damages. However, these arguments do not alter our conception of
appropriate equitable relief under ERISA and Great-West.

## 1.   <u>Statute of Limitations</u>

Section 413 of ERISA provides that:

> No action may be commenced under this subchapter with respect to a
> fiduciary's breach of any responsibility, duty, or obligation under this
> part, or with respect to a violation of this part, after the earlier of
>
> (1)   six years after (A) the date of the last action which
>       constituted part of the breach or violation or (B) in the
>       case of an omission, the latest date on which the
>       fiduciary could have cured the breach or violation, or
>
> (2)   three years after the earliest date on which the plaintiff
>       had actual knowledge of the breach or violation;
>
> Except that in the case of fraud or concealment, such actions
> may be commenced not later than six years after the date of
> discovery of such breach or violation.

29 U.S.C. § 1113.  The application of this statute to the case <u>sub</u> <u>judice</u> was the

subject of our Order of October 29, 2003  (Rec. Doc. 79) (denying Defendant's

Motion to Dismiss And/Or For Summary Judgment with respect to the statute of

limitations issue), and was further addressed in our February 25, 2004 Order (Rec.

Doc. 117).  However, both parties submit that this Court has interpreted § 413

incorrectly and have offered alternative conceptions of the applicable limitations

period, which we will now address in turn.

Defendant argues that the applicable limitations period begins to run from

the Defendants' last misrepresentation, or, in the event that this Court again finds

this argument to be without merit, that the period begins to run from Plaintiff's

first act of detrimental reliance.  With respect to the latter argument, Defendant

asserts that because every element of the breach is satisfied upon the first act of

detrimental reliance, the cause of action has accrued.  Subsequent acts,

Defendant reasons, should not restart the statute of limitations, nor should

Plaintiffs' single cause of action be subdivided to address individual acts of

detrimental reliance separately.  (See Rec. Doc. 222 at 38-41).  Though we agree

with Defendant that Plaintiffs' claim functions as a single cause of action, we do

not reach Defendants' conclusion that Plaintiffs' entire claim is defeated because

their initial act of detrimental reliance fell outside of the limitations period.

Rather, we rely upon previous rulings and apply the reasoning of  Unisys III,

from which Defendant has not given us reason to depart.  In Unisys III, the Third

Circuit reversed the district court's grant of  summary judgment against retirees

who asserted claims of detrimental reliance that fell within the applicable

limitations period, even though their first act of detrimental reliance had occurred

outside of the applicable limitations period.  Unisys III, 242 F.3d at 506-07.

Even though their early claims of detrimental reliance based on decisions to retire

were barred by the statute of limitations, the court found that subsequent

decisions in reliance upon Unisys's representations could state a timely claim of

detrimental reliance.  Id.  The import of this holding is that the Plaintiffs' first act

of detrimental reliance could not possibly begin to toll the statute.  We explained

in our October 29, 2003 Order that Unisys III "indicates to this Court that it is

permissible, and in fact logical, to consider the date of the last act of alleged

detrimental reliance as a factor in determining whether Plaintiffs' claims in this

case are time barred."  (Rec. Doc. 79 at 17).

As we have determined in previous rulings, Defendant is incorrect to cite

the date of Defendant's last misrepresentation as the beginning of the statute of

limitations.  As we previously noted, we believe that Unisys III indicates that the

last act of detrimental reliance should begin the limitations period.  See id.

Defendant argues that we should reconsider this finding because "it is

inconsistent with Unisys to hold that a non-fiduciary act taken by *a plaintiff*

(i.e., the non-breaching party) can be 'the last action which constituted part of

the breach.'" (Rec. Doc. 249 at 26) (emphasis in original).  In that regard, we

find Defendant to be incorrect.  The court in Unisys III gives no indication that

this distinction should be made, and explicitly cites plaintiffs' alleged acts of

reliance (which potentially fell within the statute of limitations) as foreclosing the

possibility of summary judgment.[7]

Therefore, we again conclude that the date of Blue Cross's last misrepresentation does not mark the beginning of the limitations period, nor does Plaintiffs' first act of detrimental reliance.  Rather, as Unisys III and our prior rulings make clear, the applicable limitations period begins when the cause of action accrues, which can be no later than Plaintiffs' last act of detrimental reliance.  Like the Unisys plaintiffs' claims, some of Leuthner and Reasner's claimed acts of detrimental reliance occurred more than six years before Plaintiffs filed suit.  However, Unisys III reveals that summary judgment is not appropriate when Plaintiffs could still put forward alternate claims of liability based on acts of detrimental reliance that fall within the statutory period.  See id. at 506-07.  Accordingly, summary judgment is not warranted with respect to the timing of Plaintiffs' claims.

Plaintiffs have also expressed displeasure at our decisions regarding the proper basis of the statute of limitations, requesting that we alter our holding to postpone the running of the statute of limitations until Plaintiffs' reliance

_____

[7] Defendant also argues that if Plaintiffs show that any acts of detrimental reliance occurred within the applicable limitations period, this reliance is unreasonable because Plaintiffs possessed documents revealing that their health benefits could be terminated.  As we discussed above, possession of documents detailing employees' health benefits will not as a matter of law defeat Plaintiffs' claims.  Accordingly, summary judgment is not appropriate on these grounds.

becomes detrimental.  Plaintiffs submit that this Court should start the limitations

period in September 2000, when Defendants terminated the benefits. Otherwise,

Plaintiffs argue, a fiduciary could "escape liability by simply waiting long enough

after disregarding the interests of plan beneficiaries."  (Rec. Doc. 243 at 45).

While there is arguably merit to Plaintiffs' concern that the limitations period

could be manipulated for such purposes, that contingency is not before us.  We

simply decline to extend and possibly conflict with the Third Circuit's precedent

as exhibited in Unisys III by reaching issues not necessary to the resolution of

the pending Motion.[8]

### 2.      Plaintiff Reasner's Release Agreement

Defendant's final theory in support of its Motion involves the Release

agreement that Plaintiff Reasner entered into with Blue Cross on May 24, 1999

("Release").  Defendant argues that this agreement precludes Plaintiff Reasner

from filing suit against the company.  Defendant further contends that filing this

suit constitutes a breach of the Release, for which Reasner must refund all plan

payments pursuant to their agreement.

---

[8] Plaintiff does not ask us to call into question the applicability of the Unisys III holding in that respect. Though we note Judge Mansmann's concurring opinion, it is inappropriate for us to go beyond the holding of our Court of Appeals. Moreover, in this case it is not alleged that Defendants postponed the termination of retirement benefits in order to escape liability under the applicable limitations period. Therefore, our decision as it appears in previous orders will remain unchanged with respect to the statute of limitations.

The Release was the subject of this Court's Order of December 1, 2003 (Rec. Doc. 86), in which we refused to grant Defendant's Motion to Dismiss. We did so, in part, because we concluded that the Release did not invalidate all of Plaintiff Reasner's claims for relief.  We held that the Release precluded claims that accrued on or before May 24, 1999, but did not bar claims that accrued after that date.  (Rec. Doc. 86 at 4).  We found that the accrual of a claim must involve both a misrepresentation and an act taken in reliance and determined that Plaintiff Reasner potentially relied on Defendant's misrepresentations after the Release was signed.  However, as the evidence was insufficient to determine the exact dates of Reasner's reliance, we held only that Plaintiff's act of reliance could occur no later than September 2000, when Plaintiffs received notice of the Plan amendment.  (Rec. Doc. 86 at 7).[9]

Defendant first argues that the evidence shows that Plaintiff's first act of detrimental reliance predates the Release, which invalidates Reasner's claim. As

---

[9] Defendant refers to an "apparent tension" between past Orders with respect to which act of detrimental reliance would cause Plaintiffs' claim to accrue. We recognize that these Orders could be construed to conflict with one another, but find that our Order of February 25, 2004, resolves any outstanding tension. Though we did previously mention Plaintiffs' first act of detrimental reliance, in our Order of February 25, 2004, we affirmed our interpretation that Unisys III indicates that Plaintiffs' claim could accrue based on their last act of detrimental reliance.  To find that Plaintiffs' claim accrued on their first act of detrimental reliance, as Defendant suggests, would result in a holding that would stand in stark conflict with the Third Circuit precedent set forth in Unisys III.  We have neither the power nor the inclination to make such a holding.

we have already established that the first act of detrimental reliance does not as a matter of law preclude a claim based on later acts of detrimental reliance, we decline to grant Defendant's Motion on these grounds.[10]  Next, Defendant argues that Plaintiff Reasner's possession of documents alerting him that his benefits could change precluded reasonable detrimental reliance well before the Release had been signed, invalidating Plaintiff's claims based on acts of reliance that occurred after the Release.  (See Rec. Doc. 222 at 44).  We have disposed of this issue in this narrative, finding that Plaintiffs' possession of plan details will not, as a matter of law, preclude their claims.  Accordingly, summary judgment is not warranted.

Plaintiff argues that the Release binds Reasner from bringing actions based on Blue Cross as an employer, but does not bar claims with respect to Blue Cross's actions as a fiduciary because such a bar was not contemplated by the parties when forming the Release.  Indeed, "a release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given."  Bowersox Truck Sales and Service, Inc. v. Harko Nat. Ins.

---

[10] Similarly, Plaintiff argues that the release does not bar Plaintiffs' claims because the cause of action should not accrue until Plaintiffs' reliance becomes detrimental.  (Rec. Doc. 243 at 54).  We have already resolved that we will not apply Plaintiffs' analysis on the proper accrual date of these causes of action, and restate that the cause of action accrues with Plaintiffs' last act of detrimental reliance.

Co., 209 F.3d 273, 279 (3d Cir. 2000) (quoting Restifo v. McDonald, 230 A.2d 199, 210 (Pa. 1967)(internal citations omitted)).  However, we are not convinced that a fiduciary breach was not reasonably considered by the parties in forming this Release.  The Release shows Plaintiff's affirmation that "he understands he is waiving any potential claim(s) he may have under Title VII, OWBPA, ADEA, ADA, EPA, FMLA, FLSA, WPCL, PHRA, PMWA, ERISA and WARN."  (Def.'s Mot. Dismiss Pls.' 2nd Am. Comp. and/or Summ. J. Ex. 16).  As we discussed in our Order of December 1, 2003, we read the Release to encompass Plaintiff's claims that accrued prior to or on May 24, 1999.  (Rec. Doc. 86 at 9.)  This unambiguously includes claims pursuant to ERISA, such as for breach of fiduciary duty.  As Plaintiffs note, "In determining the intent of the parties, 'the terms of the release will be given their ordinary meaning unless a different meaning was clearly intended.'"  (Rec. Doc. 243 at 50) (quoting Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 (3d Cir. 1975)).  Plaintiff has argued that the Release served to absolve Blue Cross from liability for a pending discrimination claim, but has not presented reason for this Court to find that the parties did not reach a meeting of the minds regarding the preclusion of ERISA claims.[11]

_____

[11] We do note, however, that with regard to Plaintiff Reasner's claims under the Release, Plaintiff must prove to the trier of fact that he relied to his detriment on Defendant's misrepresentations after the Release was signed.

Finally, Defendant argues that because Plaintiff Reasner filed this suit, he must refund all payments received pursuant to the Release.  However, as we have found that Plaintiff Reasner's claims are not, as a whole, invalid under the Release, we need not reach the refund issue at this time.  In the event that the trier of fact finds Plaintiff Reasner's acts of detrimental reliance that remain in the case <u>sub judice</u> to be insufficient to constitute a cause of action, we will proceed at that juncture to address damages to be awarded Defendant pursuant to the Release.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      Defendants' Motion for Summary Judgment (doc. 220) is DENIED.

2.      Plaintiff's Motion in Limine (doc. 186) is granted with respect to Part C.  All other rulings on this Motion are hereby deferred.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge