IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK W. LEUTHNER, ET AL., | : | |
| | : | No.  4:CV-02-1709 |
| Plaintiffs, | : | |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| BLUE CROSS OF NORTHEASTERN PENNSYLVANIA, | : : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**July 27, 2006**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Second Motion for Summary Judgment ("the Motion") (doc. 266) filed by Defendant Blue Cross of Northeastern Pennsylvania ("Defendant" or "Blue Cross") on March 27, 2006.  For the reasons that follow, the Motion shall be denied in all respects.

**FACTUAL BACKGROUND/PROCEDURAL HISTORY:**

The factual background and procedural history of this case has been thoroughly set forth in prior orders and is well known to the parties.  The following brief recitation of that history is sufficient for the purpose of reviewing the pending

Motion.

The plaintiffs Frank W. Leuthner ("Leuthner") and William Reasner ("Reasner") (collectively "Plaintiffs") initiated this action on September 26, 2002, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* and Pennsylvania state law. This suit was brought by Plaintiffs in their capacity as retired salaried employees of Blue Cross and as participants in the Blue Cross of Northeastern Pennsylvania Retiree Health Insurance Plan ("the Plan"), an employee welfare plan sponsored and administered by Blue Cross which is subject to ERISA.

On May 4, 2005 Defendant filed its First Motion for Summary Judgment (doc. 220), asserting that Plaintiffs' claims were barred by the six year statute of limitations found in § 413 of ERISA. This Court denied that Motion as per a September 8, 2005 Order (doc. 256) as we found that the statute of limitations had not expired prior to the filing of the complaint.

On January 27, 2006, the Third Circuit Court of Appeals handed down its decision in Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197 (3d Cir. 2006) (hereinafter "Ranke"). Blue Cross now brings a Second Motion for Summary Judgment before this Court, arguing that the precedent announced in Ranke conflicts with the rationale utilized by this Court in denying Blue Cross' First

Motion for Summary Judgment. Defendant's Second Motion for Summary Judgment maintains that the <u>Ranke</u> precedent binds this Court to grant summary judgment in the Defendant's favor. The Motion was filed on March 27, 2006, and has been briefed by the parties. Therefore, the Motion is ripe for disposition.

**<u>STANDARD OF REVIEW</u>:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED .R. CIV. P. 56(c); <u>see</u> <u>also</u> <u>Turner v. Schering-Plough Corp.</u>, 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." <u>Young v. Quinlan</u>, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. <u>Peterson v. Lehigh Valley Dist. Council</u>, 676 F.2d 81, 84 (3d Cir. 1982). Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. <u>Id.</u> at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is

made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A

dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**DISCUSSION:**

Blue Cross contends that the Third Circuit's Ranke opinion conflicts with the rationale used by this Court in determining that the statute of limitations found in § 413 of ERISA (also referred to as "29 U.S.C. § 1113") does not bar Plaintiff's breach of fiduciary duty claim. Section 413 of ERISA provides that:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part [29 U.S.C. § 1101 et seq.], after the earlier of--
> (1) six years after (A) the date of the last action which constituted part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (2006).

### A. Interpretation of § 413 of ERISA

At the heart of both Motions for Summary Judgment that have been asserted by Defendant in the case sub judice is the correct interpretation of the phrase "the date of the last action which constituted part of the breach or violation." Defendant

contends that the "last act" refers to Defendant's last misrepresentation (which is outside the statutory period), while Plaintiffs assert that it refers to the last detrimental act taken in reliance upon Defendant's misrepresentation (which is within the statutory period).  In deciding Defendant's First Motion for Summary Judgment, the Court relied upon the Third Circuit Court of Appeals' decision in <u>In Re: Unisys Corp. Retiree Medical Benefit "ERISA" Litigation</u> (hereinafter "Unisys III").

The Third Circuit has instructed that "It may be that retirees who retired before those dates [six years prior to the filing of the complaint] relied to their detriment in making other decisions after those dates." <u>Unisys III</u>, 242 F.3d 497, 506-07.  Therefore, summary judgment would be inappropriate in such instances. <u>Id.</u> at 507.  However, summary judgment would be appropriate with respect to those "who assert claims based solely on retirement decisions made more than six years before suit was filed." <u>Id.</u>  When read in concert, such statements from <u>Unisys III</u> are ambiguous in that on the one hand, they could mean that a claim is valid so long as it is based upon *any* act of detrimental reliance, subsequent to a misrepresentation if that claim is brought within the statutory period. On the other hand, the statements at issue could mean that a claim is valid only if it is grounded in the *first* act of reliance upon a particular misrepresentation if the claim is brought within the statutory period.  We previously adopted the former interpretation. <u>See</u>

Rec. Doc. 256. Thus, we concluded that although earlier claims of detrimental reliance based on decisions to retire may be barred by the statute of limitations, subsequent decisions made in reliance upon misrepresentations would be timely if made within six years of this reliance. (Rec. Doc. 256 at 18-19). Stated differently, any claim based on detrimental reliance upon defendant's misrepresentations would be timely if pleaded within six years of its occurrence.

In Ranke, the Third Circuit illuminated its understanding of the "last date of action" as referenced by § 413 of ERISA. In rendering this decision, the Ranke Court specifically stated that Unisys III was controlling. Ranke, 436 F.3d at 202. It stated, "Unisys III did not hold that plaintiffs may 'reset the clock' by later detrimental reliance occurring after their claims first accrued." Id. at 203. In explaining that plaintiffs who retired outside the limitations period may still have viable claims if they relied to their detriment within the six year limitation period, we interpret that the Court meant to extend this "exception" only to those plaintiffs who did not previously rely to their detriment on the specific misrepresentation in which their claim was grounded. See id. at 203. The granting of this extension is based upon the presumptions that the Defendant "may have engaged in additional acts of breach that were separate from the original breach[ ]," and that the claim was grounded in a first reliance on an additional breach. Id.

Nonetheless, the Ranke Court refrained from determining whether the date of the detrimental reliance or the date of the defendant's misrepresentation constituted the "date of last action," as both occurrences fell on the same date. Id.  The Court stated,

> 'The date of last action' was [when defendant employer misrepresented pension plan benefits in an attempt to persuade plaintiff employees to change employment, which plaintiffs did at that time]. Appellant's complaint contains no other allegation of misrepresentations occurring [after this misrepresentation] that are independent and not mere continuations of the initial misrepresentations that led to the changes of employment.

Id. at 203.

### B. The Applicability of Ranke to the Case Sub Judice

The Plaintiffs in the instant case contend that the clarification Ranke provides to § 413 of ERISA is not applicable to the case sub judice. They claim that Ranke is applicable solely to situations in which misrepresentation and reliance are simultaneous, and then proceed to note that the misrepresentation predated the detrimental reliance in this instance. (Rec. Doc. 274 at 5).  Further, Plaintiffs note that Ranke contains no allegations of breach of fiduciary duty or detrimental reliance on a breach of fiduciary duty within the six year statutory period, id. at 11, whereas they specifically allege a subsequent course of systematic and pervasive misrepresentations and acts of detrimental reliance within the statutory period.  (Pls'.

8

Second Am. Comp. at ¶ 9).

While <u>Ranke</u> does not directly involve situations such as that presented in the above-captioned case, it does provide important guidance for situations such as this. In starting the statutory period from the date on which there was both misrepresentation and reliance, the Third Circuit noted that the complaint contained "no other allegation of misrepresentations occurring [after the date of initial misrepresentation and reliance] that are independent of and not mere continuations of the initial misrepresentation" upon which Plaintiffs have already relied. <u>Ranke</u>, 436 F.3d at 203. It then proceeded to note that the <u>Unisys III</u> plaintiffs who had viable claims even though they retired outside the statutory period received such a favorable presumption because they had not detrimentally relied when they retired (their incidents of post-retirement reliance were their first acts of reliance on that particular misrepresentation). <u>Id.</u>

We accordingly infer the following about the Third Circuit's interpretation of § 413 of ERISA. The claims of employees who retire outside the limitations period and who make no additional detrimental reliance allegations are time barred. <u>Unisys III</u> at 507. Claims of employees who retire within the limitation period and aver detrimental reliance resulting from that retirement are viable. <u>See id.</u> Claims of employees who retire outside the limitations period are viable only if that retirement

was not in detrimental reliance upon the misrepresentation in question and if the reliance upon the misrepresentation in question is the employee's first reliance on that misrepresentation. Ranke, 436 F.3d at 203. Stated another way, claims in the latter situation are viable only if based on acts of detrimental reliance on misrepresentations that are "independent and not mere continuations of" any previous misrepresentations upon which claims have already accrued (i.e. upon which detrimental reliance has already occurred). See id. The Third Circuit explained that any misrepresentation that was "independent of and not merely a continuation of" any previous misrepresentation starts the statutory period anew for claims based on that particular misrepresentation. Id. at 203.

We are cognizant that these dictates emanating from Ranke are dicta, and are accordingly not directly binding upon this Court. However, the case sub judice revolves around an emerging area of law that is still in its nascent stages of development. We find it prudent and in fact necessary to follow the persuasive dicta announced in the recent Third Circuit decision, rather than to send this incipient area of law spiraling into the doldrums of confusion and uncertainty. Thus, we will apply the Ranke dicta to this case.

### C. Defendant's Statute of Limitations Argument

Plaintiffs initiated this action on September 26, 2002. Consequently, the six year statutory period announced in § 413 of ERISA mandates that, in order to be viable, any claim raised in this case must be based on actions occurring after September 26, 1996. It is conceded that Plaintiff Leuthner retired in December 1994 and that Plaintiff Reasner retired in 1999. (Rec. Doc. 267 at 1). While it is further conceded that Plaintiffs did not receive explicit misrepresentations from Defendants after 1994, id. at 4-5, Plaintiffs contend that Defendant engaged in a systematic, pervasive, and continuing course of misrepresentation that lasted until 1999. (Rec. Doc. 274 at 11). As a result of this conduct, Plaintiffs aver that they were victims of detrimental reliance until 2001, at which point they became cognizant of the Defendant's misrepresentations through its manifest intent to alter their retirement plan. Id. at 8.

In averring this, Plaintiffs seem to insinuate that Defendant engaged in a systematic scheme of misrepresentation that induced the detrimental reliance of Plaintiffs until 2001. At this juncture, it is important to note that the existence of such a scheme (i.e. the relatedness of the misrepresentations to each other) is inapposite to the disposition of this case; rather, the novelty and independence of the misrepresentations are the dispositive elements. For if Defendant engaged in post-

11

retirement misrepresentations that were new and independent from the misrepresentation(s) that induced Plaintiff's retirement, the occurrence of each new misrepresentation would serve as a benchmark for the beginning of the statute of limitations on any claim based on that misrepresentation, regardless of the inter-relatedness of the misrepresentations. If the post-retirement misrepresentations are not substantially new and independent from the misrepresentation(s) that induced Plaintiff's retirement, then Plaintiff's claims are time barred since the latest possible date to which an initial act of detrimental reliance can be traced (i.e. retirement) falls outside the 6 year statutory period.

    Plaintiff Reasner alludes to Exhibits C and D to support the pervasive scheme allegation. Exhibit C is a handout distributed at a meeting regarding the 1999 changes to the retirement plan offered by Defendant. Plaintiff Reasner avers that although this handout outlined changes to the retirement plans of future retirees, it affirmatively stated that "current retirees would remain under the traditional indemnity program." (Rec. Doc. 274 at 8). Exhibit D is a memorandum sent to Plaintiff Reasner from Blue Cross indicating that he would be grand-fathered under the 1994 Plan, without any indication that this Plan could be altered in the future. Id. at 11-12. Plaintiff Reasner asserts that these actions by Blue Cross constitute additional and independent misrepresentations.

Plaintiffs Leuthner and Reasner also direct the Court to Exhibit E, a benefits booklet, which they contend implies that their retirement plan will be left unaffected. Id. at 13. Additionally, Plaintiffs allege that Blue Cross engaged in further independent acts of misrepresentation by sending out letters to current retirees that allegedly implied that current changes would not impact them. Id.

Defendant responds by asserting that not only were these instances not *new* and *independent* acts of misrepresentation, they were not acts of misrepresentation at all. With regard to Exhibit C, Defendant asserts:

> Even a brief review of the document . . . demonstrates that Plaintiffs have either misunderstood or misrepresented it. Under the heading **'Will the Company Ever Eliminate Post-Retirement Medical?'** Blue Cross disclosed that it 'reserve[d] the right to change, modify or eliminate *any* benefit in the future and may do so depending on the circumstances which may occur in the future.'

Rec. Doc. 278 at 6 (quoting Pls.' Second Am. Comp., Ex. C at 1, ¶ 8).

Similarly, Blue Cross alleges that claims regarding Exhibit D misrepresent the nature of that document. Defendant asserts that this document alerted Plaintiff Reasner to changes to the Blue Cross *pension plan*, not the retirement plan in question, and informed him that changes to the *pension plan*, would not affect him. (Rec. Doc. 278 at 6). Additionally, Blue Cross urges this Court to reject any claims of detrimental reliance on Exhibit E because it is alleged that neither Plaintiff read the pamphlet and therefore could not have detrimentally relied upon it. Id.  It is further

13

alleged that the Plaintiffs could not have detrimentally relied upon the pamphlet even if they had read it, as it supposedly disclosed Blue Cross' right to modify or terminate the retirement plans of the Plaintiffs. Id.

Finally, Plaintiffs direct the Court to a letter dated March 4, 1999 that informed existing retirees to changes in the retirement plan that would not affect them. In response to Plaintiffs' claims of detrimental reliance on this document, Defendant notes that the document plainly disclosed only that "this change" would not affect the existing retirees. Id. at 8. Defendant avers that the document never precluded the possibility that future changes could affect existing retirees. Id.

Defendant's response to Plaintiffs' averments regarding these documents allegedly reveal the "truth" behind Plaintiffs' retirement benefits; which, in Plaintiffs' view, is that Blue Cross retained the right to alter the employees' benefits at any time. See Rec. Doc. 222 at 7-13. Defendant argues that reliance on any alleged misrepresentations or expectancies by an employer is always unreasonable when employees have in their possession information explaining their benefits. See In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 58 F.3d 896, 908 (3d Cir. 1995) [hereinafter "Unisys I"]. Defendant further notes that prior changes to employees' plans should have alerted Plaintiffs that their benefit structure was subject to change. However, Unisys I does not hold that such evidence is sufficient

14

to defeat a claim of detrimental reliance upon a breach of fiduciary duty.

A fiduciary's obligations with respect to its beneficiaries include not only the duty not to mislead, but "also an affirmative duty to inform when the trustee knows that silence might be harmful." Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993). The Third Circuit's decision in Bixler led to the district court's reconsideration and ultimate reinstatement of the Unisys I plaintiffs' claims for breach of fiduciary duty, which the Third Circuit subsequently affirmed. See Unisys III, 242 F.3d at 500-02. The Unisys III court asserted that providing plaintiffs with a summary of their benefits did not satisfy Unisys's fiduciary responsibility. Id. at 508. In some circumstances, a fiduciary's failure to correct beneficiaries' mistaken reliance on benefits can constitute a breach of fiduciary duty, even if the beneficiaries' reliance is unreasonable. Id. The Bixler and Unisys I decisions focus on "'a fiduciary's duty to deal fairly with its beneficiary and, more specifically, to communicate . . . material facts affecting the interest of the beneficiary which [the fiduciary] knows the beneficiary does not know and which the beneficiary needs to know for his protection.'" Id. (quoting Restatement (Second) of Trusts § 173 cmt. d (1959) (internal citations omitted)).

Accordingly, Plaintiffs' failure to take note of the various changes and documents that Defendant alleges should have apprized them of "the truth" behind

their plan will not, as a matter of law, preclude their claims of detrimental reliance. Rather, if the fiduciary should have foreseen that the messages conveyed could have caused employees to rely to their detriment, and failed to correct such confusion, a trier of fact could find that a fiduciary had breached its duty to adequately inform its beneficiaries. See Unisys III, 242 F.3d at 508.

If the communications at issue are adjudged to be misrepresentations, they can support a valid claim of detrimental reliance if they are independent of and not merely a continuation of the previous misrepresentations, and if they have not been previously relied upon to the Plaintiffs' detriment. Such an inquiry into the nature and context of the various messages and representations that Plaintiffs received, and the foreseeability of their misunderstanding, are matters most appropriately decided by the trier of fact, in accordance with our September 8, 2005 Order. (Rec. Doc. 256 at 7). Therefore, summary judgment is inappropriate at this juncture.

### D.     Defendant's § 1113(1)(B) Claim

Defendant alternatively argues that if this Court does not adopt its interpretation regarding the running of the statute of limitations found in 29 U.S.C. § 1113(1)(A), we should instead adopt 29 U.S.C. § 1113(1)(B) to commence the running of the statute of limitations. The relevant language of this section states that in the case of omissions, the six year statutory period runs from the "the latest date

on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1)(B) (2006).  This section is properly applied only to those claims characterized as "omissions."

In the instant case, Plaintiffs initially aver that their claims are based in misrepresentation, and then proceed to proffer the omission argument in the alternative. These alternative arguments are mutually exclusive, since a communication cannot simultaneously be both a misrepresentation and an omission. The nature of each communication will therefore indicate which section of 29 U.S.C. § 1113(1) is appropriate in commencing the statutory period for claims based on that communication. As previously addressed and noted, this Court has determined that the trier of fact is best equipped to determine the nature and context of the communications in question.  Defendant's Motion is accordingly denied.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Second Motion for Summary Judgment (doc. 266) is DENIED.

s/ John E. Jones III
John E. Jones III
United States District Judge
